Rodney S. Diggs, Esq. (SBN 274459)
*rdiggs@imwlaw.com*
**IVIE McNEILL WYATT PURCELL & DIGGS**
**A Professional Law Corporation**
444 South Flower Street, Suite 1800
Los Angeles, California 90071
Telephone:     (213) 489-0028
Facsimile:     (213) 489-0552

Attorneys for Plaintiff, **JANE DOE**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual, | CASE NO.:  2:24-cv-02604-SPG-JC |
| *Plaintiff,* | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| vs. | 1. **SEXUAL BATTERY**<br>2. **BATTERY**<br>3. **SEXUAL ASSAULT**<br>4. **NEGLIGENCE**<br>5. **FALSE IMPRISONMENT**<br>6. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| CLIFFORD HARRIS, an individual PKA TI, TAMEKA HARRIS, an individual PKA Tiny DOES 1-20, ABC Corp. 1-20, and 123 Corp. 1-20 inclusive, | |
| *Defendants.* | **Filed Pursuant to**<br>**Code of Civil Procedure Section 340.16, as amended by Assembly Bill 2777**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JANE DOE, by and through her attorney of record, alleges as follows:

## <u>INTRODUCTION</u>

1.     Plaintiff is a survivor of sexual abuse, sexual battery, sexual assault, and rape at the hands of CLIFFORD HARRIS and TAMEKA HARRIS in or around 2005.

2.     As a result, the Plaintiff has suffered severe emotional, physical, and psychological injury, including humiliation, shame, guilt, economic loss, economic capacity, and permanent emotional distress.

**PARTIES**

3.      Plaintiff JANE DOE (hereinafter "PLAINTIFF") is a United States Air Force veteran. For many years, Plaintiff selflessly devoted her life to protecting the freedoms and the values that make up the fabric of what the Citizens of the United States believe in.

4.      Unfortunately for Plaintiff, a weekend off base to attend an event that was put on by GRAND HUSTLE LLC, the employer of CLIFFORD HARRIS and TAMEKA HARRIS, resulted in her being drugged and raped by the Harris Defendants.

5.      Defendant CLIFFORD HARRIS, professionally known as TI (hereinafter "TI"), is an American rapper, singer, songwriter, record producer, and actor. He rose to prominence in the early 2000s after releasing his album "Urban Legend," which reached number one on the US *Billboard* Hot 100.  He performs all across the nation, including California.

6.      Defendant TAMEKA HARRIS, professionally known as Tiny (hereinafter "Tiny"), is an American singer, songwriter, and record producer. She is a member of the R&B group Xscape. The group rose to prominence in the early 1990s after releasing their debut album "Escape," which reached number two on the US *Billboard* Hot 100.  She performs all across the nation, including California.



DEFENDANTS CLIFFORD HARRIS AND TAMEKA HARRIS CIRCA 2005

7.      Defendant GRAND HUSTLE, LLC ("GH") is a limited liability company founded by Defendant Clifford Harris on or about, March 11, 2003. According to the attached, State of Georgia, Secretary of State, Corporation Division, Amended Annual Registration, GHR has a

principal office address of 545 Fifth Avenue, Suite 1100 FFO, NEW YORK, NY, 10017.



DEFENDANT GRAND HUSTLES LOGO CIRCA 2005

8.     The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Defendants, DOES 1–20, inclusive, are unknown to Plaintiff. Accordingly, Plaintiff sues DOES 1–20 by such fictitious names under section 474 of the California Code of Civil Procedure. The Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiff is informed and believes and thereon alleges that DOES 1–20 is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

9.     The true names and capacities, whether individual, corporate, partnership, associate or otherwise, of Defendants ABC Corp. 1-20, inclusive, are unknown to Plaintiff. Accordingly, Plaintiff sues ABC Corp. 1-20 by such fictitious names pursuant to section 474 of the California Code of Civil Procedure. The Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiff is informed and believes and thereon alleges that ABC Corp. 1-20 is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

10.     The true names and capacities, whether individual, corporate, partnership, associate or otherwise, of Defendants 123 Corp. 1-20, inclusive, are unknown to Plaintiff. Accordingly, Plaintiff sues 123 Corp. 1-20 by such fictitious names pursuant to section 474 of the California Code of Civil Procedure. The Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiff is informed and believes and thereon

alleges that 123 Corp. 1-20 is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

11.    On information and belief, at all times material hereto, Defendants were the agents, representatives, servants, employees, partners, and/or joint venturers of each and every other Defendant. They acted within the course and scope of said alternative capacity, identity, agency, representation, and/or employment and were within the scope of their authority, whether actual or apparent.

## JURISDICTION

12.    TI, Tiny, and Jones (collectively, "Defendants") purposely availed or directed themselves to California jurisdiction by their minimal contacts with the state through being physically present in California in 2005 when they committed the acts alleged herein.

## PLAINTIFF'S LAWSUIT IS TIMELY

13.    Plaintiff brings her claims pursuant to the Sexual Abuse and Cover-Up Accountability Act, AB2777. California Civil Procedure Code § 340.16(e) provides that a claim seeking to recover damages suffered as a result of a sexual assault that occurred on or after a plaintiff's 18th birthday otherwise barred may be brought subject to this act between January 1, 2023, and December 31, 2023.

14.    The applicable statute of limitations does not bar the claims asserted herein.

15.    California expanded the statute of limitations for certain sexual assault cases; CCP § 340.16(a) was amended in 2022 to add subdivision (b)(3).

16.    This amendment provided that civil actions that were otherwise time-barred after the enactment of CCP § 340.16 (a) could be revived if the alleged sexual assault occurred on or after January 1, 2009, and a lawsuit was filed before December 31, 2026. See CCP § 340.16 (b)(3).

17.    The 2022 amendment applies to this lawsuit based on conduct that occurred in 2005.

18.    The California legislature afforded survivors of sexual assault whose assault occurred before 2009 one year to file suit if an entity or *its agents* covered up the sexual assault.

19.    In the relevant part, CCP § 340.16(e) provides a one-year window in 2023 for

actions against entities for their agents for the attempted cover-up of sexual assault actions:

"(e) (1) Notwithstanding any other law, any claim seeking to recover damages suffered as a result of a sexual assault that occurred on or after the Plaintiff's 18th birthday that would otherwise be barred before January 1, 2023, solely because the applicable statute of limitations has or had expired, is at this moment revived, and a cause of action may proceed if already pending in court on January 1, 2023, or, if not filed by that date, may be commenced between January 1, 2023, and December 31, 2023.

20.    This subdivision revives claims brought by a plaintiff who alleges all of the following: (A) The Plaintiff was sexually assaulted, (B) One or more entities are legally responsible for damages arising out of the sexual assault, (C) The entity or entities, including, but not limited to, their officers, directors, representatives, employees, or agents, engaged in a cover-up or attempted a cover-up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse.

21.    (4) For purposes of this subdivision: (A) "Cover-up" means a concerted *effort to hide evidence* relating to a sexual assault that incentivizes individuals to remain silent or prevents information relating to a sexual assault from becoming public or being disclosed to the Plaintiff, including, but not limited to, the use of nondisclosure agreements or confidentiality agreements, (B) "Entity" means *a sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity*, (C) "Legally responsible" means that the entity or entities are liable under any theory of liability established by statute or common law, including, but not limited to, negligence, intentional torts, and vicarious liability.

22.    (5) *This subdivision revives any related claims*, including, but not limited to, wrongful termination and sexual harassment, *arising out of the sexual assault* that is the basis for a claim pursuant to this subdivision."

## **FACTS**

23.    In or around 2005, Plaintiff was serving the United States as a member of the US Air Force. She was around 22 or 23 years old and was stationed in Los Angeles at the time.

24.    Rapper "T.I." (DEFENDANT CLIFFORD HARRIS) (hereinafter "T.I.") is a rapper and actor wide widespread popularity.

25.    Tiny (DEFENDANT TAMEKA HARRIS (hereinafter "Tiny") was in a popular

1990's music group called Xscape.

26.     Tiny and T.I. have been married for almost 15 years starting in 2010.

27.     Defendants T.I. and Tiny have an infamous reputation for drugging, kidnapping, falsely imprisoning, raping and assault women and forcing them to engage in sexual acts with the couple for their own sexual gratification.[1]

28.     Defendants T.I. and Tiny have also been known to threaten individuals with violence, even having brandished a gun to a former employee who also experienced sexual assault by the couple.

29.     Plaintiff was living with her friend who was also in the US Air Force.

30.     The evening before being drugged and raped by Defendants TI and Tiny, Plaintiff and her friend drove Plaintiff's stick shift, Nissan Sentra from Rosemond, California, to the Antilope Valley Mall in Palm Ville, California.

31.     While at the mall Plaintiff and her friend were approached by a man named "Caviar" who introduced himself as an employee, producer, and song writer of Grand Hustle and TI.



KANNON "CAVIAR" CROSS

32.     Caviar informed Plaintiff and her friend that his employers, Grand Hustle and TI

---

[1] *See* https://www.nytimes.com/2021/02/28/arts/music/ti-tiny-allegations-sexual-assault.html.

were hosting parties that evening, one being at the Rapper Coolio's house, and another being a club.

33.    Caviar informed them that he was sent on a mission to recruit beautiful women to attend this party and proceeded to invite Plaintiff and her friend to the parties.

34.    Caviar is an artist and music producer who was employed by Grand Hustle, LLC at the time.





♡ **18**   💬   ⏀                                                    🔖

**klasikradio101** Today in #HipHopHistory: #TIvsTIP is
the 5th studio album by #TI, released July 3, #2007
through #GrandHustle Records, #AsylumRecords and
#AtlanticRecords. Recording sessions for the album
took a year and a half to record towards early-2007, T.I.
stated and confirmed in an interview with #MTVNews.
Production was handled by several record producers,
including Kannon "Caviar" Cross, #JustBlaze,
#MannieFresh, Lil' C, #WyclefJean, #JerryWonder
Duplessis, Sedeck "All Hands on Deck" Jean, Keith "Lil'
Wonda" Duplessis, Kevin "Khao" Cates, Bao Quoc
Pham, Steve Holdren, Nate "#Danja" Hills,
#TheRunners, #TonyGalvin, #Eminem, #JeffBass, and

**klasikradio101** Today in #HipHopHistory: #TIvsTIP is the 5th studio album by #TI, released July 3, #2007 through #GrandHustle Records, #AsylumRecords and #AtlanticRecords. Recording sessions for the album took a year and a half to record towards early-2007, T.I. stated and confirmed in an interview with #MTVNews. Production was handled by several record producers, including Kannon "Caviar" Cross, #JustBlaze, #MannieFresh, Lil' C, #WyclefJean, #JerryWonder Duplessis, Sedeck "All Hands on Deck" Jean, Keith "Lil' Wonda" Duplessis, Kevin "Khao" Cates, Bao Quoc Pham, Steve Holdren, Nate "#Danja" Hills, #TheRunners, #TonyGalvin, #Eminem, #JeffBass, and #KeithMack, among others. To date, it is the only T.I. album not to feature production from #DJToomp. The album debuted at number one on the US Billboard 200 chart, selling over 470,000 copies in its first week of release in the United States, nearly gold. It also achieved respectable international charting and produced the one hit single that attained chart success, including the US Billboard hit "#BigThingsPoppin' (Do It). The Recording Industry Association of America certified the album Platinum. Upon its release, #TIvsTIP received mixed reviews from music critics. The album operates on the concept that T.I. the businessman and T.I.P. the unreformed hustler are two completely different entities, and that the strain of balancing the two personas is enough to tear Clifford Joseph Harris Jr. apart. T.I. vs. T.I.P. was nominated for a Grammy Award for Best Rap Album, losing to Kanye West's Graduation at the 50th Annual #GrammyAwards. The album won the American Music Award for Favorite Rap/Hip-Hop Album at The American Music Awards of 2007. T.I. also won the American Music Award for Favorite Rap/Hip-Hop Artist at The American Music Awards of 2007. #klasikradio

35.     Upon information and belief, Caviar was a producer on TI's 2007 American Music Award winning album, "T.I. vs. T.I.P." (**See, Exhibit A, T.I. – T.I. Vs T.I.P. (2007, Vinyl) – Discogs**).

36.     When Plaintiff and her friend arrived at Coolio's house, they noticed that TI was not there, even though Caviar told them he would be there.

37.     Upon information and belief, Caviar worked for T.I. and Tiny at all relevant times and was acting within the course and scope of his employment and/or as an accomplice with T.I. and Tiny when he brought Plaintiff and her friend to the club to meet T.I. and Tiny.

38.     Upon information and Caviar worked as an agent of T.I. and Tiny and worked at their bequest to solicit women to be drugged and sexually assaulted by the couple.

39.     At the party, Caviar introduced Plaintiff and her friend to rapper "Lil Duval" who indicated T.I. and Tiny were not going to come because they were out all day, and that they would be at another club the following evening.

40.     The following evening, which was a Saturday evening, Plaintiff and her friend went to the unknown club somewhere in Los Angeles, California. This time, T.I. and Tiny were present at the club and had a VIP section which Plaintiff and her friend were escorted to. Caviar and Lil Duval were also present in the VIP section.

41.     As they sat in the VIP section, Plaintiff noticed that T.I. and Tiny were whispering to each other and pointing to different women around the club in a suspicious manner.

42.     Over the course of being at the club, Plaintiff ordered two Amaretto Sours. At some point, Tiny asked Plaintiff what she was drinking. When Plaintiff returned the inquiry, Tiny handed Plaintiff a drink she had been drinking, but that Plaintiff never saw her take a sip of herself. Tiny watched her take the drink. At that time, Plaintiff had no reason to believe the drink contained any drugs, and allowed her friend to try some also.

43.     Shortly after Tiny succeeded in having Plaintiff taste her drink, T.I. stated he and Tiny were leaving the club. He asked Plaintiff to join them, but indicated Plaintiff's friend, could not join them. Caviar then indicated Plaintiff's friend could ride with him since they would all be going to the same location. Plaintiff and her friend reluctantly agreed to be separated.

44.     While in the vehicle on their way to the "afterparty," Tameka Harris and Clifford Harris passed around shots of alcohol from what Plaintiff believed to be a pre-opened bottle of Patron.  Tameka and Clifford Harris forced everyone in the vehicle to take shots, and after one shot, Plaintiff immediately began feeling the effects of whatever Defendants placed in that shot of alcohol.

45.     T.I. and TINY intentionally drugged Plaintiff to incapacitate her for the sexual assault and battery.

46.     When they arrived at the location for the "afterparty," Chateau Marmont, Clifford Harris' security, who happened to an employee of Grand Hustle, checked the group into the hotel under an alias.



CHATEAU MARMONT, THE LOCATION WHERE DEFENDANTS RAPED PLAINTIFF

47.     The group then went upstairs to the suite.  When Plaintiff arrived at the suite, she asked Clifford and his security guard for her friend.  Clifford's security guard informed her not to worry about her friend because she was in good hands with Caviar.

48.     Plaintiff believed that her friend and Caviar were enroute to Chateau Marmont. After some time, Plaintiff would learn that there was no after party as no additional guests arrived, and Clifford and Tameka Harris lured her to their hotel suite under false pretenses.

49.     Once Plaintiff left the club with T.I. and Tiny, they got in an SUV with two other

females that were at the club. They rode a short distance to a hotel.

50.     Once at the hotel, Plaintiff, T.I., Tiny, and the two unknown females went upstairs to the hotel room. T.I. and Tiny's security guard also went into the room.

51.     When Plaintiff arrived at the suite, she asked TI and his security guard for her friend.  TI's security guard informed her not to worry about her friend, because she was in good hands with Caviar.

52.     T.I. then handed the security guard his jewelry and the security guard left the room.

53.     Once the security guard left the room, Tiny saw one of the two unknown females was flirting with T.I. too much, and she was ordered to leave. The other unknown female that was with her also left since they were together.

54.     Plaintiff believed that her friend and Caviar were enroute to Chateau Marmont. After some time, Plaintiff would learn that there was no after party as no additional guests arrived, and TI and Tiny lured her to their hotel suite under false pretenses.

55.     Additionally, Plaintiff learned that TI and Tiny had no intention to regroup with Caviar and plaintiffs' friend, and their plan was to drug and rape Plaintiff.

56.     Once it was just T.I., Tiny, and Plaintiff in the room, T.I. began giving Plaintiff explicit detail and instruction for how the remainder of the night was going to go. Plaintiff felt as if T.I. was reciting a script that he had given to multiple women that had been in the same position as her and that he and Tiny had likely brought several women back to a hotel room on multiple occasions to assault and batter them, as they were about to do to Plaintiff, which made Plaintiff feel extremely uncomfortable.

57.     Plaintiff felt extremely intimidated and felt she was unable to leave.

58.     T.I. told Plaintiff all three of them had to go freshen up in the bathroom. Once in the bathroom, Tiny took off all of Plaintiff's clothing. Tiny also got naked and was wearing only a hair bonnet.

59.     T.I. then joined them in the bathroom and was also naked. Plaintiff was then directed to get in the shower and T.I. and Tiny entered the shower with her. Plaintiff was extremely shocked and uncomfortable. T.I. had told Plaintiff she looked better naked.

60.    Once in the shower, T.I. told Plaintiff Tiny would bathe Plaintiff and T.I.

61.    T.I. also pointed out a scar on Plaintiff's abdomen and asked Plaintiff if she had been shot, which Plaintiff denied.

62.    Plaintiff was then signaled to get into the bed with T.I. As Plaintiff walked over to the bed, she felt extremely dizzy and lightheaded. Plaintiff could tell she was experiencing something serious and debilitating that was not a symptom of a typical drink or few drinks.

63.    Tiny stayed in the shower while T.I. directed Plaintiff to the bed, still naked and visibly drugged, because T.I. indicated Tiny was "spotting" due to her menstrual cycle.

64.    When T.I. and Plaintiff were sitting on the bed, T.I. turned on a pornographic movie that he wanted them to watch so he can get aroused.

65.    T.I. then handed Plaintiff a bottle of massage oil and demanded she begin rubbing oil on his back and naked body.

66.    Tiny then joined Plaintiff and T.I. on the bed.

67.    Tiny then began to rub Plaintiff's back and buttocks forcing her to lay face down on her stomach. Tiny proceeded to get on Plaintiff's back, while she was still naked, and grind back and forth on Plaintiff's back. Plaintiff began to feel sick, disgusted, and nauseated.

68.    While Tiny was straddled on Plaintiff's back and pinning her down, T.I. then proceeded to slide his toes into Plaintiff's vagina.

69.    Plaintiff told him "No" and tried to move T.I. out of her and away from her.

70.    At no point did Plaintiff consent to taking drugs or to the events that ensued that evening.

71.    Plaintiff was feeling the effects of being drugged and was not capable of fully pushing T.I. away.

72.    T.I. then said he would go get a condom, and Tiny continued to arouse herself by grinding on Plaintiff and massaging her backside. Plaintiff grew increasingly sicker and felt extremely ill by the assault and battery she was experiencing.

73.    Plaintiff felt like she was outnumbered by both TI and Tiny and felt defenseless and sick due to the effects of the drink she ingested.

74.    While grinding on Plaintiff, Tiny also said she wished they were at her home so she could "fuck" Plaintiff with her dildo.

75.    Following this comment, Plaintiff forced herself up and went into the bathroom where she proceeded to vomit.

76.    T.I. started to laugh and mock Plaintiff by saying "are you alright?...looks like you in last place." Plaintiff knew she was drugged by Tiny and T.I. with the drink Tiny handed her while still at the club for the purpose of sexually assaulting and battering her.

77.    T.I. then went over to Tiny and began performing oral sex on her.

78.    At some point during the assault, Plaintiff heard T.I. ask Tiny something about a situation involving Plaintiff or "the one before." Plaintiff did not know what he was referring to, but assumed it was about another woman they likely brought back to a room to be assaulted.

79.    After Plaintiff finished vomiting, she made her way to the couch, naked, dazed, sickened, and weak.

80.    Plaintiff then passed out until the following morning.

81.    When she woke up in the morning, Plaintiff felt a throbbing soreness in her vagina consistent with having been violently penetrated. Plaintiff never consented to penetration and was blacked out for the remainder of the assault and battery.

82.    Firstly, the morning after Plaintiff was assaulted, she was awakened by the Defendant employee, who she believed was the defendant's security who was approximately six feet five inches tall and weighed over two hundred and fifty pounds.

83.    To the best of Plaintiff's recollection, the security guard resembled a bouncer in a nightclub, as he was dressed in all black, wearing construction boots, and jeans.

84.    He was an African American male and had a menacing appearance. He intimidated a disorientated Plaintiff, rushing her to get up and leave. At the time Plaintiff was five feet five inches tall and weighed one hundred and fifteen pounds.



THESE PHOTOS WERE TAKEN IN ATLANTA AND LOS ANGELES IN OR AROUND THE SAME TIME TI AND TINY DRUGGED AND RAPED PLAINTIFF IN 2005

85.    To the best of her recollection, the darkskin African American male over TI's shoulder in the photo to the top left, and the African American male in standing off to the right of TI as he performs on stage, is the same security guard identified above.

86.    When Plaintiff was awakened, she had a robe or towel thrown over her as she slept on the couch.

87.    The Plaintiff did not have the ability to collect all her belongings as the defendants' employee demanded that she leave the room before the defendants woke up.

88.    Disorientated, Plaintiff immediately noticed her vagina was in serious pain.  There was an itching and burning sensation in her vagina.

89.    Plaintiff was crying, and the security guard told her she needed to leave. The security guard then grabbed Plaintiff's clothing, with the exception of her underwear, and underlayer clothing and escorted her out of T.I. and Tiny's room. T.I. and Tiny were both still in the bed was Plaintiff was escorted out of the room.

90.    According to the defendant's employee, the defendant instructed him to clear the room first thing in the morning and to ensure there was no one present when they woke up.

91.    She asked the defendant's employee to allow her to search the room for her belongings, and he said no.

92.    The Plaintiff was only allowed to leave with the selective, cherry-picked items defendant's employee provided to her.

93.    Plaintiffs underwear, the robe, and her underlayer of clothing, with the DNA

evidence of the individual Defendants, were left behind.

94.   Plaintiff believes this act by the Defendants employee was routine and intentional. It's as if the Defendants had trained him to confiscate the used clothing of their sexual assault victims to cover up and or clean up the evidence of their criminal acts.

95.   Upon leaving the hotel room, Plaintiff was in clear distress.  She could not recall where her vehicle was parked, she did not have any money, and her phone was dead.

96.   Plaintiff could not find her friend and was forced to beg for a phone call in an effort to find her.

97.   Plaintiff eventually connected with her friend and when she did, Plaintiff was horrified at what she found.

98.   Plaintiffs friend was not safe as TI and Tiny had indicated.  In fact, Plaintiffs friend was ill and had been sexually assaulted by Caviar as she threw up in a restroom at a hotel lobby.

99.   Plaintiff called Caviar and confronted him about what he did to her friend and about what TI and Tiny did to her.

100.   She was furious as it was clear to her that Caviar, TI and Tiny set her and her friend up to be drugged and raped.

101.   Aside from being furious, plaintiff sought information concerning the drugs that she was given, and whether or now he knew what happed to her after she passed out.  It was unclear if Caviar made it back to the hotel, and Plaintiff just did not know, or if Caviar knew the routine the Harrises implemented when engaging in these acts of sexual abuse.  Plaintiff wanted to know what the individual defendants had done to her.

102.   Caviar disregarded Plaintiffs concerns and encouraged plaintiff not to make a big deal of the night, because according to him, Plaintiff would have a hard time proving it, TI was an international star, and TI is not the person Plaintiff wanted to play with.

103.   Plaintiff was taken aback by Caviar's warning.  Plaintiff had heard rumors of TI's violent criminal past, but did not truly consider its impact until it was brought to her attention by Caviar.

104.   Caviar also, warned Plaintiff her military service might be jeopardized if it gets out that she "allowed" herself to be in the predicament that resulted in her being raped.

105.   Upon information and belief, the following is a timeline of TI's criminal history

pre and post raping Plaintiff:

Pre-Rape Criminal History:

a.    In 1994, Defendant Clifford Harris was arrested for dealing drugs,

b.    **1998:** He was arrested and convicted in Georgia for distribution of cocaine, manufacturing and distributing a controlled substance and giving authorities a false name. He was sentenced to three years in prison and was released after serving one year,

c.    **2001:** He was arrested for gun possession,

d.    **2002:** Instance where he was carrying a 10mm pistol and a 2004 bust during which authorities found a silencer-enhanced weapon, loads of ammunition, and

e.    **2004:** He was busted on a parole violations in several counties around Georgia for offenses ranging from possession of a firearm to possession of marijuana.

Post Rape Criminal History:

f.    **October 2007:** T.I. was arrested for attempting to illegally purchase firearms just hours before he was scheduled to perform at the BET Hip Hop Awards. He served 366 days in prison,

g.    **March 2009:** T.I. sentenced to a year and a day in prison in plea deal in relation to the weapons charges,

h.    **September 2010:** He was arrested in Los Angeles on drug charges after authorities said he was found with four ecstasy pills, and

i.    **October 2010:** He was sentenced in October 2010 to 11 months in prison for the parole violation in September. When he was released from that sentence, he was required to perform 1,000 hours of community service.

106.    As evidenced above, when Mr. Harris violently raped Plaintiff, he was on probation.

107.    Within hours days of being sexually assaulted by the defendants, Plaintiff complained to several of her friends and family members.

108.    Days and weeks after being raped, Plaintiff suffered from vagina irritation.

Plaintiff confronts, Tameka Tiny Harris on Facebook Messenger

109.    On or about August 4, 2007, TI had a concert at the Toyota Center in Houston, Texas.

110.    After learning of the August 4, 2007, concert, Plaintiff confronted Tiny on

Facebook Messenger regarding the sexual assault she suffered in 2005. Plaintiff wanted to know what they did to her, and she wanted to know if they used anything to cause her vagina to have the negative reaction it had for a long time after the rape.

111.    At the time, Tiny was an employee of Grand Hustle, LLC working as an artist, producer and song writer.

112.    Defendant Tiny disregarded Plaintiff's claims and refused to atone for the harm that she and her husband caused Plaintiff to suffer.

113.    Based on information and belief, Tameka Harris co-wrote a 2004 Grand Hustle Records song, "Can I Walk By."

114.    Finally, Defendants had a pattern and practice of engaging in this behavior as their employees and agents conspired to cover up the Defendants' rape of Plaintiff by confiscating her clothes and threatening her not to make a big deal of the assault due to the Defendants' criminal history and their contacts and connections.

## FIRST CAUSE OF ACTION
### SEXUAL BATTERY
### CALIFORNIA CIVIL CODE § 1708.5
### (As to Individual Defendants, Does 1-20)

115.    Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

116.    The Plaintiff brings this claim for sexual battery under California Civil Code § 1708.5 against the Defendants.

117.    Defendants committed a sexual assault, as defined in Civil Code §340.16(b)(1) (referencing sections of the California Penal Code).

118.    Sometime in 2005, Defendants  CLIFFORD HARRIS, an individual PKA TI, TAMEKA HARRIS, an individual PKA Tiny drugged Plaintiff, took her back to their hotel room, forced her to get naked, shower with the couple, rub T.I. with oil and watch pornographic movies. The Defendants then caused Plaintiff to be sexually grinded on while lying on her stomach while T.I. forced himself inside her vagina with his foot.

119.    When she woke up in the morning after being blacked out from the drugs, Plaintiff felt a throbbing soreness in her vagina consistent with having been violently penetrated. Plaintiff

never consented to penetration and was blacked out for the remainder of the assault and battery.

120.  Plaintiff did not consent to any of the sexual assault or misconduct and did not have the capacity to consent after being drugged by Defendants.

121.  Through the aforementioned acts, Defendants caused harmful or offensive contact with an intimate part of Plaintiff's body as defined by California Civil Code § 1708.5.

122.  Through the aforementioned acts, Defendants caused harmful or offensive contact between an intimate part of Defendant's body and Plaintiff's body as defined by California Civil Code § 1708.5.

123.  Through the aforementioned acts, Defendants caused Plaintiff an imminent apprehension of harmful or offensive contact with an intimate part of Plaintiff's body, and sexually offensive contact with Plaintiff resulted.

124.  As described in this Complaint, the Defendant's conduct was done with oppression, fraud, and/or malice.

## SECOND CAUSE OF ACTION
### BATTERY
### (As to Individual Defendants, Does 1-20)

125.  Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

126.  Defendants willfully violated Plaintiff's statutory right to be free from sexual battery by committing the assault.

127.  Sometime in 2005, Defendants CLIFFORD HARRIS, an individual PKA TI, TAMEKA HARRIS, an individual PKA Tiny drugged Plaintiff, took her back to their hotel room, forced her to get naked, shower with the couple, rub T.I. with oil and watch pornographic movies. The Defendants then caused Plaintiff to be sexually grinded on while lying on her stomach while T.I. forced himself inside her vagina with his foot.

128.  When she woke up in the morning after being blacked out from the drugs, Plaintiff felt a throbbing soreness in her vagina consistent with having been violently penetrated. Plaintiff never consented to penetration and was blacked out for the remainder of the assault and battery.

129.   Plaintiff did not consent to any of the sexual assault or misconduct and did not have the capacity to consent after being drugged by Defendants.

130.   Through the aforementioned acts, Defendants caused harmful or offensive contact with Plaintiff's person.

131.   As a result of Defendant's conduct, Plaintiff has suffered economic injury, all to Plaintiff's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

132.   As a result of Defendants' above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

### THIRD CAUSE OF ACTION
**ASSAULT**
**(As to Individual Defendants, Does 1-20)**

133.   Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

134.   Sometime in 2005, Defendants CLIFFORD HARRIS, an individual PKA TI, TAMEKA HARRIS, an individual PKA Tiny drugged Plaintiff, took her back to their hotel room, forced her to get naked, shower with the couple, rub T.I. with oil and watch pornographic movies. The Defendants then caused Plaintiff to be sexually grinded on while lying on her stomach while T.I. forced himself inside her vagina with his foot.

135.   When she woke up in the morning after being blacked out from the drugs, Plaintiff felt a throbbing soreness in her vagina consistent with having been violently penetrated. Plaintiff never consented to penetration and was blacked out for the remainder of the assault and battery.

136.   Plaintiff did not consent to any of the sexual assault or misconduct and did not have the capacity to consent after being drugged by Defendants.

137.   Plaintiff is informed and believes and thereon alleges that Defendants committed the aforementioned acts with the intent to cause harmful or offensive contact with Plaintiff's person.

138.   Plaintiff is informed and believes and thereon alleges that Defendant's

aforementioned acts would offend a reasonable person and/or a reasonable sense of personal

dignity.

139.     Defendants' aforementioned acts did offend Plaintiff and did offend Plaintiff's

sense of personal dignity.

140.     The Plaintiff did not consent to the aforementioned acts of the Defendants.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE
**(As to Defendants GRAND HUSTLE LLC, ABC Corp. 1-20, and 123 Corp Does 1-20,
inclusive)**

141.     Plaintiff re-alleges and incorporates the allegations contained in the preceding

paragraphs as though fully set forth herein.

142.     Defendants knew and/or should have known that Defendant did and was capable of

sexually abusing Plaintiff.

143.     Sometime in 2005, Defendants CLIFFORD HARRIS, an individual PKA TI,

TAMEKA HARRIS, an individual PKA Tiny drugged Plaintiff, took her back to their hotel room,

forced her to get naked, shower with the couple, rub T.I. with oil and watch pornographic movies.

The Defendants then caused Plaintiff to be sexually grinded on while lying on her stomach while

T.I. forced himself inside her vagina with his foot.

144.     Plaintiff did not consent to any of the sexual assault or misconduct and did not have

the capacity to consent after being drugged by Defendants.

145.     Defendants had a duty to not recklessly endanger Plaintiff and to exercise ordinary

care in the management of their property or person.

146.     Defendants breached their duties to Plaintiff by committing the sexual assault and

failing to investigate or otherwise confirm or deny such facts of sexual abuse and harassment by

Defendants.

147.     Defendants breached their duty to Plaintiff by failing to prevent Defendants from

committing wrongful sexual acts with Plaintiff.

148.     As a direct and proximate result of the conduct of Defendants, individually, jointly,

and/or severally, Plaintiff sustained severe emotional distress and physical pain, emotional

anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries, damages (both economic and noneconomic), and permanent disability, in the past, present, and future, for which this claim is made. The injuries suffered by the Plaintiff are substantial, continuing, and permanent.

### FIFTH CAUSE OF ACTION
### FALSE IMPRISONMENT
**(As to Defendants GRAND HUSTLE LLC, ABC Corp. 1-20, and 123 Corp, Does 1-20, inclusive)**

149.    Plaintiff repeats, re-alleges, and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

150.    Plaintiff was wrongfully restrained/confined and/or detained by Defendants.

151.    Defendants intentionally deprived Plaintiff of her freedom of movement when they drugged her and did not let her leave their hotel room with the intent to sexually assault and batter her.

152.    Defendants falsely imprisoned Plaintiff when they forced her to get naked and sat on top/straddled her so that she would not be able to leave and be forced to engage in sexual activity with them.

153.    From her time at the club, Defendants were in complete control of Plaintiff, to the point where she was taken in their vehicle to a hotel room after being drugged by Defendants.

154.    Plaintiff was forced to be in the hotel room and engage in sexual activity with Defendants without her consent and was too drugged to get up and leave.

155.    When she woke up in the morning after being blacked out from the drugs, Plaintiff felt a throbbing soreness in her vagina consistent with having been violently penetrated. Plaintiff never consented to penetration and was blacked out for the remainder of the assault and battery.

156.    A reasonable person in Plaintiff's position would not have felt free to leave or have been physically able to leave the hotel room.

157.    As a result of Defendants' conduct, and each of them, Plaintiff suffered serious, mental, physical, and emotional harm.

158.    Defendants committed the aforementioned infliction of emotional distress

willfully and intentionally and by means of oppression, fraud, and malice and in conscious disregard of Plaintiffs rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages in an amount to be established at trial to meaningfully punish Defendants, thereby deterring similar conduct in the future.

## SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(As to Individual Defendants 1-20, inclusive)**

159.    Plaintiff re-alleges and incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

160.    Sometime in 2005, Defendants CLIFFORD HARRIS, an individual PKA TI, TAMEKA HARRIS, an individual PKA Tiny drugged Plaintiff, took her back to their hotel room, forced her to get naked, shower with the couple, rub T.I. with oil and watch pornographic movies. The Defendants then caused Plaintiff to be sexually grinded on while lying on her stomach while T.I. forced himself inside her vagina with his foot.

161.    When she woke up in the morning after being blacked out from the drugs, Plaintiff felt a throbbing soreness in her vagina consistent with having been violently penetrated. Plaintiff never consented to penetration and was blacked out for the remainder of the assault and battery.

162.    Plaintiff did not consent to any of the sexual assault or misconduct and did not have the capacity to consent after being drugged by Defendants.

163.    During the assault and battery, Plaintiff was crying and had a strong visceral reaction to her assault and battery by Defendants.

164.    Since the sexual assault and battery, Plaintiff has experienced severe trauma, mental and emotional anguish, and often re-lives the assault and battery from Defendants.

165.    Defendants' extreme and outrageous conduct alleged in this Complaint, including but not limited to sexual assault, sexual battery, battery, and rape upon Plaintiff, and done in wanton and reckless disregard of such consequences to Plaintiff.

166.    As a direct and proximate result of said extreme and outrageous conduct by Defendants, Plaintiff did suffer humiliation, mental anguish, and emotional and physical distress and has been hurt and injured in her health, strength, and activity, sustaining an injury to her

nervous system and person, all of which have caused, continue to cause and will continue to cause Plaintiff great mental, physical and nervous pain and suffering.

167.    As a result of such severe emotional distress, Plaintiff has been generally, specially, and consequentially damaged in an amount to be established according to evidence.

168.    Defendants committed the aforementioned infliction of emotional distress willfully and intentionally and by means of oppression, fraud, and malice and in conscious disregard of Plaintiffs rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages in an amount to be established at trial to meaningfully punish Defendants, thereby deterring similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1. For past, present, and future general damages in an amount to be determined at trial;

2. For past, present, and future special damages, including but not limited to past, present, and future lost earnings, economic damages, and others in an amount to be determined at trial;

3. For any appropriate punitive or exemplary damages;

4. Any appropriate statutory damages;

5. For the cost of the suit,

6. For interests as allowed by law;

7. For attorney's fees pursuant to California Government Code § 12965(c)(6) or California Code of Civil Procedure § 1021.5; and

8. For such other and further relief as the Court may deem proper.


Dated: August 28, 2024                    **IVIE McNEILL WYATT PURCELL & DIGGS**

                          By:    /s/ Rodney S. Diggs_____
                                 **RODNEY S. DIGGS, ESQ.**
                                  Attorneys for Plaintiff
                                 **JANE DOE**

1

2                          **<u>DEMAND FOR JURY TRIAL</u>**

3          Plaintiff JANE DOE hereby demands a jury trial.

4
    Dated: August 28, 2024                **IVIE McNEILL WYATT PURCELL & DIGGS**
5
                                 By:     <u>/s/ Rodney S. Diggs</u>
6                                        **RODNEY S. DIGGS, ESQ.**
                                         Attorneys for Plaintiff
7                                        **JANE DOE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28