**RODNEY S. DIGGS, Esq. (SBN 274459)**
RDiggs@imwlaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
A Professional Law Corporation
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone:  (213) 489-0028
Facsimile:  (213) 489-0552

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual, | Case No:  2:24-cv-02604-SPG-JC |
| Plaintiff, | **PLAINTIFF'S NOTICE OF OPPOSITION AND OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; FILED CONCURRENTLY WITH MOTION TO STRIKE; DECLARATION OF RODNEY S. DIGGS** |
| vs. | |
| CLIFFORD HARRIS, an individual PKA TI, TAMEKA HARRIS, an individual PKA Tiny, DOES 1-20, ABC Corp. 1-20, and 123 Corp. 1-20 inclusive, | |
| Defendants. | Date:         October 16, 2024<br>Time:         1:30 p.m.<br>Dept.:        5C, First Street Courthouse |

Plaintiff JANE DOE ("Plaintiff") hereby submits her Opposition to Defendants CLIFFORD HARRIS PKA TI and TAMEKA HARRIS PKA TINY ("Defendants") Motion to Dismiss Plaintiff's First Amended Complaint and Request to Strike Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.

This Opposition shall be based upon this Notice, the file and records of the within action, the attached Memorandum of Points and Authorities, and any such

additional oral and documentary evidence as may be submitted at the hearing of this matter.

Dated:  October 9, 2024          **IVIE McNEILL WYATT PURCELL & DIGGS**


**By: _/s/ Rodney S. Diggs_**
          **RODNEY S. DIGGS, ESQ.**
          Attorney for Plaintiff,
          **JANE DOE**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................6

   1.    Bad-Faith Meet and Confer Efforts that Did Not Put Plaintiff on Notice of the Motion to Dismiss the First Amended Complaint.........................................6

II.   LEGAL STANDARDS .............................................................7

  1.    Standard Under F.R.C.P. 12(b)(6)................................................7

  2.    Federal Standard on Leave to Amend ............................................9

III.  ARGUMENT.....................................................................10

  1.    The Applicable Statute of Limitations Does NOT Bar this Lawsuit, the Complaint, and All Claims Asserted Therein..................................................10

  2.    Plaintiff Sets Forth Allegations That Establish Cognizable Claims for Relief Against Defendants..................................................................14

  3.    Plaintiff States a Claim for Battery, Sexual Battery, and Assault.................15

    a.    Sexual Battery Under California Civil Code Section 1708.5 ....................16

  4.    Plaintiff States a Claim for False Imprisonment .............................16

  5.    Plaintiff States a Claim for Negligence and Intentional Infliction of Emotional Distress ..........................................................................17

  A. DEFENDANTS' MOTION IS SUBJECT TO STRIKE AND TO SANCTIONS FOR FAILING TO MEET AND CONFER ................................18

  B.    PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND .........18

  1.    Good Cause Exists to Grant Leave to Amend................................19

  2.    Plaintiff's Motion for Leave to Amend is Timely.........................19

  3.    There is No Prejudice to Defendant to Grant Plaintiff's Request to Amend the Complaint.......................................................................19

IV.   CONCLUSION....................................................................19

DECLARATION OF RODNEY DIGGS .............................................21

# TABLE OF AUTHORITIES

**Cases**

Alvarez v. Hill (9th Cir. 2008) 518 F.3d 1152, 1157 ...............................................8

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) .........................................................7

Barker v. Riverside County Office of Ed. (9th Cir. 2009) 584 F.3d 821, 824 ..........8

Bell Atlantic Corp. v. Twombly (2007) 550 US 544, 555, 127 S.Ct. 1955, 1964 ....8

Bocanegra v. Jakubowski, 241 Cal. App. 4th 848, 855, 194 Cal. Rptr. 3d 327 (2015)................................................................................................................17

Braden v. Wal-Mart Stores, Inc. (8th Cir. 2009) 588 F.3d 585, 595........................8

Broudo v. Dura Pharm., 339 F.3d 933, 941 (9th Cir. 2003)............................. 10, 19

Cauchi v. Brown (E. D. Cal 1991) 51 F.Supp.2d 1014, 1016 ..................................8

Cluff v. Farmers Ins. Exchange, 10 Ariz. App. 560, 460 P.2d 666, 668 (Ariz. Ct. App. 1969) ........................................................................................................17

Doe v. Fitzgerald, No. CV 20-10713-MWF (RAOx), 2022 U.S. Dist. LEXIS 8194 (C.D. Cal. January 6, 2022) .................................................................................16

Doe v. United States (9th Cir. 2005) 419 F3d 1058, 1062 .......................................8

Ebert v. Cty. of San Bernardino, No. 5:21-cv-02075-JWH-SHK, 2023 U.S. Dist. LEXIS 103768 (C.D. Cal. June 14, 2023).........................................................16

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003)..9, 18

Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ........................................................................................................................17

Foman v. Davis, 371 U.S. 178, 182 (1962) ........................................................9, 18

Ford v. Revlon, Inc., 153 Ariz. 38, 734 P.2d 580, 585 (Ariz. 1987)......................17

Gilligan v. Jamco Development Corp. (9th Cir. 1997) 108 F.3d 246, 249 ..............8

Hatmaker v. Memorial Med. Ctr. (7th Cir. 2010) 619 F.3d 741, 743].....................8

Hearns v. San Bernardino Police Dept. (9th Cir. 2008) 530 F3d 1124, 1131..........9

Homoki v. Conversion Services, Inc. (5th Cir. 2013) 717 F.3d 388, 402................8

Kirkpatrick v. County of Washoe (9th Cir. 2016) 843 F3d 784, 790........................9

Lawrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 245 (5th Cir. 1997) ..............9, 19

McMullen v. Fluor Corp., 81 F. App'x 197, 199 (9th Cir. 2003) .................... 10, 19

Mediacom Southeast LLC v. BellSouth Telecommunications, Inc. (6th Cir. 2012) 672 F3d 396, 400 ................................................................................................8

People v. Key (1984) 153 Cal. App. 3d 888, 895 [203 Cal. Rptr. 144] .................15

People v. Vela, 172 Cal. App. 3d at p. 242.........................................................15

Rescuecom Corp. v. Google Inc. (2nd Cir. 2009) 562 F.3d 123, 127 .....................8

Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)........................................17

Self Directed Placement Corp. v. Control Data Corp. (9th Cir. 1990) 908 F.2d 462, 466..................................................................................................................................9

So v. Shin, 212 Cal. App. 4th 652, 669, 151 Cal. Rptr. 3d 257 (2013)...................16

Starr v. Baca (9th Cir. 2011) 652 F3d 1202, 1212 ..................................................8

State v. Robinson (Me. 1985) 496 A.2d 1067 .........................................................14

Stevenson v. City of Seat Pleasant, Md. (4th Cir. 2014) 743 F.3d 411, 418............9

United States v. Redwood City (9th Cir. 1981) 640 F.2d 963, 966 .........................8

United States v. White (C.D. Cal, 1995) 893 F.Supp. 1423, 1428...........................8

**Rules**

California Civil Code section 1708.5 ......................................................................16

CCP § 340.16 (b)(3)................................................................................................10

CCP § 340.16(a)......................................................................................................10

CCP § 340.16(e)................................................................................................ 10, 12

Fed. R. Civ. P. 15(a)...........................................................................................9, 18

Fed. R. Civ. P. 15(a)(2)......................................................................................9, 18

FRCP 12(f)..............................................................................................................18

FRCP 8(d)(1)............................................................................................................8

Rule 12(b)(6)............................................................................................................7

Rule 15(a)................................................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff is a United States Air Force veteran.  For many years, Plaintiff selflessly devoted her life to protecting the freedoms and the values that make up the fabric of what the Citizens of the United States believe in.  Unfortunately for Plaintiff, a weekend off base to attend an event that was put on by Grand Hustle Records, the employer of Clifford and Tameka Harris, resulted in her being drugged and raped by the Harris Defendants.

On January 2, 2024, Plaintiff filed her Compliant in this action. Plaintiff on two separate occasions agreed to stipulate to allow Defendants to file a responsive pleading (Dkts. 26-27). On June 27, 2024 the Defendant filed a Motion to Dismiss the Plaintiff's Complaint. [Dkt.29]. The Motion to Dismiss argued, among other things, that Plaintiff's Complaint must be dismissed for failure to state a claim. In lieu of filing an Opposition, Plaintiff filed a First Amended Complaint.

On June 20, 2024, Plaintiff met and conferred with the defendant's counsel and shared her intention to file this amended complaint in lieu of filing an opposition to their motion to dismiss. The Parties represented their intent to try to informally resolve some of the issues raised by Defendants that they submitted would be subject to a Motion to Dismiss. The Parties did not exchange any further communication before the filing of Defendants' Motion to Dismiss. On July 17, 2024, the day Plaintiff's Opposition to the Motion to Dismiss would otherwise be due, Defendants expressed that they would not be amendable to stipulating for Plaintiff to file an amended complaint. This was particularly in bad faith since Plaintiff allowed Defendants extensive time and submit their Motion.

### 1.   Bad-Faith Meet and Confer Efforts that Did Not Put Plaintiff on Notice of the Motion to Dismiss the First Amended Complaint

In a further show of bad-faith, Defendants' Counsel sent a meet and confer

correspondence only to Attorney Rodney Diggs on September 4th and 6th, 2024. In all other correspondences, Ms. Cameron-Banks cc'd Attorney Tyrone Blackburn and Provisionally Licensed Lawyer Tyrine Aman as well as Attorney Diggs' Legal Secretaries. Ms. Although Mr. Diggs is the primary attorney on the matter, Defendants' Counsel was fully aware that Attorney Tyrone Blackburn and Provisionally Licensed Lawyer Tyrine Aman were assisted Mr. Diggs in meet and confer efforts. Glaringly, Ms. Cameron-Banks only spoke to Ms. Aman and Mr. Blackburn when the Parties originally met and conferred for the original complaint. Ms. Cameron-Banks and Mr. Diggs have never spoken on the phone and never exchanged e-mail correspondence between each other. As such, Ms. Cameron-Banks intentionally directed her e-mails to Mr. Diggs only in order to circumvent true good-faith meet and confer efforts. Glaringly, Defendants' Counsel was required to meet and confer in good faith under LR 7-3.

With this, Mr. Diggs never received any of Ms. Cameron-Banks e-mails on September 4th or 6th. Ms. Cameron-Banks e-mails went to Mr. Diggs spam folder because he had never responded to her previously, it was always Tyrone Blackburn or Tyrine Aman who responded to e-mails from Ms. Cameron-Banks. Further, Ms. Cameron-Banks should, at the very least, have cc'd Ms. Aman and Mr. Blackburn on her September 6th follow-up e-mail only to Mr. Diggs when she did not receive any response after September 4th.

## II.  **LEGAL STANDARDS**

### 1.  **Standard Under F.R.C.P. 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A claim has "facial plausibility" if the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). It is well-established in the Ninth Circuit that a 12(b)(6) dismissal is

disfavored and should only be granted in "extraordinary" cases. United States v. Redwood City (9th Cir. 1981) 640 F.2d 963, 966; Cauchi v. Brown (E. D. Cal 1991) 51 F.Supp.2d 1014, 1016; United States v. White (C.D. Cal, 1995) 893 F.Supp. 1423, 1428; Gilligan v. Jamco Development Corp. (9th Cir. 1997) 108 F.3d 246, 249.

On a motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Rescuecom Corp. v. Google Inc. (2nd Cir. 2009) 562 F.3d 123, 127; Mediacom Southeast LLC v. BellSouth Telecommunications, Inc. (6th Cir. 2012) 672 F3d 396, 400; Doe v. United States (9th Cir. 2005) 419 F3d 1058, 1062; Braden v. Wal-Mart Stores, Inc. (8th Cir. 2009) 588 F.3d 585, 595 ("Twombly and Iqbal did not change this fundamental tenet of Rule 12(b)(6) practice"); see also Barker v. Riverside County Office of Ed. (9th Cir. 2009) 584 F.3d 821, 824.

A complaint is sufficient if it gives the defendant "fair notice of what the … claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly (2007) 550 US 544, 555, 127 S.Ct. 1955, 1964 (internal quotes omitted); see Starr v. Baca (9th Cir. 2011) 652 F3d 1202, 1212 (discussing traditional liberal theory of Rule 8(a)). An allegation need only be "simple, concise, and direct. No technical form is required." FRCP 8(d)(1). As long as the facts alleged provide "fair notice" of the claim, a "complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss." Alvarez v. Hill (9th Cir. 2008) 518 F.3d 1152, 1157; Homoki v. Conversion Services, Inc. (5th Cir. 2013) 717 F.3d 388, 402; Hatmaker v. Memorial Med. Ctr. (7th Cir. 2010) 619 F.3d 741, 743].

Further, "magic words," specific phrases or legal labels characterizing the claim (i.e., "price discrimination" or "declaratory judgment") are not required, so long as sufficient facts are alleged to put defendant on notice of the claim. Stevenson

v. City of Seat Pleasant, Md. (4th Cir. 2014) 743 F.3d 411, 418; Kirkpatrick v. County of Washoe (9th Cir. 2016) 843 F3d 784, 790 (en banc). It is not even necessary to specify the precise nature of the claim asserted as long as the facts alleged put defendant on notice thereof. Self Directed Placement Corp. v. Control Data Corp. (9th Cir. 1990) 908 F.2d 462, 466. Further, "Prolixity is … a poor ground for rejecting potentially meritorious claims"; Hearns v. San Bernardino Police Dept. (9th Cir. 2008) 530 F3d 1124, 1131 ("verbosity or length is not by itself a basis for dismissing a complaint"). Here, Plaintiff has stated claims upon which relief can be granted for each cause of action and Defendants' Motion to Dismiss should be denied in its entirety.

### 2. <u>Federal Standard on Leave to Amend</u>

"A party may amend its pleading with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Federal Rule of Civil Procedure 15 mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).

In determining whether to allow an amendment, a court considers the four Foman factors: Whether there is (a) undue delay; (b) bad faith; (c) undue prejudice to the opposing party; or (d) futility of amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). "Not all of the [Foman] factors merit equal weight. . . . [I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. (emphasis in original) (quoting Lawrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 245 (5th Cir. 1997)). "Where the plaintiff offers to provide 'additional evidence' that would add 'necessary details' to an amended complaint and such offer is made in good faith, leave to amend should be granted."

McMullen v. Fluor Corp., 81 F. App'x 197, 199 (9th Cir. 2003) citing Broudo v. Dura Pharm., 339 F.3d 933, 941 (9th Cir. 2003).

Thus, Plaintiff respectfully requests the Court freely grant Plaintiff leave to amend her original First Amended Complaint because justice supports Plaintiff be given the opportunity to correct and amend her Complaint to avoid a potentially fatal result resulting from an adverse ruling on Defendant's Motion to Dismiss. Further, there is no prejudice to Defendants because the case is still in its infancy and no trial date is imminent.

## III.    ARGUMENT

### 1.    The Applicable Statute of Limitations Does NOT Bar this Lawsuit, the Complaint, and All Claims Asserted Therein

California expanded the statute of limitations for certain sexual assault cases; CCP § 340.16(a) was amended in 2022 to add subdivision (b)(3). This amendment provided that civil actions that were otherwise time-barred after the enactment of CCP § 340.16 (a) could be revived if the alleged sexual assault occurred on or after January 1, 2009, and a lawsuit was filed before December 31, 2026. See CCP § 340.16 (b)(3).  The 2022 amendment applies to this lawsuit based on conduct that occurred in 2005.  The California legislature afforded survivors of sexual assault whose assault occurred before 2009 one year to file suit if an entity or its agents covered up the sexual assault.  In the relevant part, CCP § 340.16(e) provides a one-year window in 2023 for actions against entities for their agents for the attempted cover-up of sexual assault actions:

"(e) (1) Notwithstanding any other law, any claim seeking to recover damages suffered as a result of a sexual assault that occurred on or after the Plaintiff's 18th birthday that would otherwise be barred before January 1, 2023, solely because the applicable statute of limitations has or had expired, is at this moment revived, and a cause of action may proceed if already pending in court

on January 1, 2023, or, if not filed by that date, may be commenced between January 1, 2023, and December 31, 2023.

(2) This subdivision revives claims brought by a plaintiff who alleges all of the following:

      (A) The Plaintiff was sexually assaulted.

(B) One or more entities are legally responsible for damages arising out of the sexual assault.

(C) The entity or entities, including, but not limited to, their officers, directors, representatives, employees, or agents, engaged in a cover-up or attempted a cover-up of a previous instance or allegations of sexual assault by an alleged perpetrator of such abuse.

(3) Failure to allege a cover-up as required by subparagraph (C) of paragraph (2) regarding one entity does not affect the revival of the Plaintiff's claim or claims against any other entity.

(4) For purposes of this subdivision:

(A) "Cover up" means a concerted **effort to hide evidence** relating to a sexual assault that incentivizes individuals to remain silent or prevents information relating to a sexual assault from becoming public or being disclosed to the Plaintiff, including, but not limited to, the use of nondisclosure agreements or confidentiality agreements.

(B) "Entity" means **a sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity**.

(C) "Legally responsible" means that the entity or entities are liable under any theory of liability established by statute or common law, including, but not limited to, negligence, intentional torts, and vicarious liability.

(5) **This subdivision revives any related claims**, including, but not limited to, wrongful termination and sexual harassment, **arising out of the sexual**

**assault** that is the basis for a claim pursuant to this subdivision."

Upon the Court's approval of Plaintiff's request to file an amended complaint, Plaintiff will provide additional details and sworn witness affidavits, which will satisfy the requirements of CCP § 340.16(e).  Firstly, the morning after Plaintiff was assaulted, she was awakened by the Defendant employee, who she believed was the defendant's security as he openly and prominently displayed his gun.  When Plaintiff was awakened, she had a robe or towel thrown over her as she slept on the couch. The Plaintiff did not have the ability to collect all her belongings as the defendant's employee demanded that she leave the room before the defendant woke up. According to the Defendant employee, the defendant instructed him to clear the room first thing in the morning and to ensure there was no one present when they woke up.

The Plaintiff was not wearing any underwear and could not locate her clothing.  She asked the defendant's employee to allow her to search the room for her belongings, and he said no.  The Plaintiff was only allowed to leave in the robe and with her phone.  Her underwear and her clothing, with the DNA evidence of the Defendants, were left behind.  The defendant's employee provided the Plaintiff with different clothing.   Plaintiff believes this act by the Defendants agent was routine and intentional.  It's as if the Defendants had trained him to confiscate the used clothing of their sexual assault victims to cover up and or clean up the evidence of their criminal acts.

Secondly, the Plaintiff's amended Complaint will detail the fact that the Defendant agent and or employee, Caviar ("Doe"), recruited the Plaintiff and her friend (Jane Doe 1) to attend a party that the Defendants, through their employer's Grand Hustle Records a subsidiary of Atlantic Records, hosted in a club in Los Angeles.  The Plaintiff will name Grand Hustle Records, Atlantic Records, and Grand Hustle Records CEO Jason Geter as defendants in her amended Complaint.

Mr. Geter was Clifford Harrises's manager at the time of the assault, was present at the club, and coerced Plaintiff not to report the assault.

The Defendants committed an overt act when they sent their agent, Caviar, to solicit Plaintiff and Jane Doe 1 to attend an event where they intended to drug and sexually assault them.  While Defendants were sexually assaulting Plaintiff in their hotel bedroom, their agent Caviar, brutally raped Jane Doe 1 on the bathroom floor in the hotel lobby.  Out of respect for Jane Doe 1's privacy and giving her the right to tell her story whenever she's comfortable, we will not provide the graphic details of the sexual assault that the Defendant agent visited upon her.

Within days of being sexually assaulted by the defendants, Plaintiff complained to Defendants manager and employer, Mr. Geter, whom she was introduced to through a friend of Plaintiff.  She asked for help because she needed to know what the defendants had done to her.  Days and weeks after being raped, the Plaintiff suffered from vagina irritation.  Mr. Geter warned the Plaintiff not to make a big deal of this because the defendants were wealthy, well-connected, powerful, and dangerous.  It was a well-known fact at the time that Defendant Clifford Harris was a convicted felon who served time in federal prison for gun possession and other serious violent crimes[1].  In fact, when Mr. Harris violently raped Plaintiff, he was on probation.

Mr. Geter warned the Plaintiff that nobody would believe her, and she does not have any DNA evidence to prove that they sexually assaulted her.  Mr. Geter warned Plaintiff her military service might be jeopardized if it gets out that she "allowed" herself to be in the predicament that resulted in her being raped.

On or about 2008, Plaintiff confronted Defendant Tameka Harris on Facebook

---

[1] In 1994, Defendant Clifford Harris was arrested for dealing drugs.  In March 2004, a warrant was issued for T.I.'s arrest after he violated his probation of a 1997 drug conviction, as well as a 1998 conviction for violating a state controlled substances act and for giving false information.  He was sentenced to three years in prison.  In May 2004, he was released on probation.  After being released, he earned a litany of probation violations in several counties around Georgia for offenses ranging from possession of a firearm to possession of marijuana.

Messenger regarding the sexual assault she suffered in 2005. Defendant Tameka Harris disregarded Plaintiff's claims and refused to atone for the harm that she and her husband caused Plaintiff to suffer. Based on information and belief, Defendant Tameka Harris was an employee of Grand Hustle Records, working as a songwriter and producer for the company. Upon information and belief, Tameka Harris co-wrote a 2004 Grand Hustle Records song, "Can I walk By."

Finally, Defendants had a pattern and practice of engaging in this behavior as their employees and agents conspired to cover up the Defendants' rape of Plaintiff by confiscating her clothes and threatening her not to make a big deal of the assault due to the Defendants' criminal history and their contacts and connections.

## 2. <u>Plaintiff Sets Forth Allegations That Establish Cognizable Claims for Relief Against Defendants</u>

The fact that defendants are attempting to cherry-pick sentences from Plaintiff pleading to justify raping her is appalling, disgusting, and true to form. It is settled law in California, and in every civilized jurisdiction absent the warped minds of the defendants, that no means no, and if a person is forced into an unwanted sexual encounter after saying no, then that's rape. In *State v. Robinson* (Me. 1985) 496 A.2d 1067, the court addressed the identical issue we face today. There, the jury also questioned whether initial consent to sexual intercourse forecloses a finding of rape. The court held that the trial court correctly instructed the jury that rape is committed if the sexual intercourse is continued only as a result of compulsion. (*Id*. at p. 1070.) The court noted that "[t]he dramatic change from the role of a voluntary participant to that of a victim compelled involuntarily to submit to the sexual intercourse is a distinct one." (*Robinson, supra*, at p. 1071.) When a victim is forced to submit to continued intercourse for a period after she has revoked her original consent, the crime of rape is committed. *Id*.

The *Robinson* court states the better view. We, therefore, decline to

follow *Vela*. The *Vela* court focused on "the moment of penetration as the crucial moment of the crime of rape." (*People v. Vela*, *supra*, 172 Cal. App. 3d at p. 242.) While it is true that any penetration, however slight, is sufficient to complete the crime of rape (§ 263), that was not the question presented in *Vela*, nor is it the issue presented here. *Id*.

Although the *Vela* court acknowledged that rape is "nonconsensual sexual intercourse," citing *People v. Key* (1984) 153 Cal. App. 3d 888, 895 [203 Cal. Rptr. 144]), it failed to apply the statutory language of section 261 to the factual scenario presented. Section 261, subdivision (a)(2) defines rape as sexual intercourse that is accomplished against a person's will. Under section 261, rape is necessarily committed if a victim is forced to continue with sexual intercourse against her will.

Here, even if the Court applies *Vela*, Plaintiff was raped. As detailed in the Plaintiff's pleadings, defendant Clifford Harris inserted his foot into her vagina. That act is an unsolicited penetration of Plaintiff's private parts and constitutes rape per se. Defendants also try to claim that Plaintiff's recitation of the facts and claiming that she was standing, walking, and sitting somehow means that Plaintiff was in control of her faculties and had the ability to consent. They conveniently missed the part of the pleading where Plaintiff said she felt woozy after drinking a beverage provided to her by Tameka Harris and passed out. Anyone with a modicum of common sense knows that a person cannot consent if they are drugged.

If the court believes that Plaintiff has not plausibly pleaded a claim to satisfy a cognizable claim for relief, Plaintiff respectfully requests you leave to amend.

### 3. **Plaintiff States a Claim for Battery, Sexual Battery, and Assault**

The essential elements of a cause of action for battery are: (1) the defendant touched Plaintiff, or caused Plaintiff to be touched, with the intent to harm or offend Plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in Plaintiff's position

would have been offended by the touching." *So v. Shin*, 212 Cal. App. 4th 652, 669, 151 Cal. Rptr. 3d 257 (2013), *as modified on denial of reh'g* (January 28, 2013) (emphasis added). Here, the Amended Complaint alleges, in no uncertain terms, that Defendants "caused [Ebert] to be touched." This assertion is supported by a plethora of factual allegations; Ebert details the ways in which Defendants played a role in orchestrating the attack on his person. *Ebert v. Cty. of San Bernardino*, No. 5:21-cv-02075-JWH-SHK, 2023 U.S. Dist. LEXIS 103768 (C.D. Cal. June 14, 2023).

### a. <u>Sexual Battery Under California Civil Code Section 1708.5</u>

The Plaintiff also asserts claims for sexual battery under California Civil Code section 1708.5. To state a claim under section 1708.5, Plaintiffs must allege that Defendant: 1. Act[ed] with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results[; or] 2. Act[ed] with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results[; or] 3. Act[ed] to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results. Cal. Civ. Code § 1708.5. *Doe v. Fitzgerald*, No. CV 20-10713-MWF (RAOx), 2022 U.S. Dist. LEXIS 8194 (C.D. Cal. January 6, 2022).

Here, Plaintiff clearly satisfies the elements of Assault, Battery, and Sexual Battery. Even with the Defendants cherry-picking of Plaintiff's pleading, they still fail to show that their clients did not assault, batter, and sexually batter Plaintiff. If the court believes that Plaintiff has not plausibly pleaded a claim for Assault, Battery, and Sexual Battery, Plaintiff respectfully requests leave to amend.

### 4. <u>Plaintiff States a Claim for False Imprisonment</u>

A false imprisonment claim requires (1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable

period of time, however brief. *Bocanegra v. Jakubowski*, 241 Cal. App. 4th 848, 855, 194 Cal. Rptr. 3d 327 (2015).

Here, after Plaintiff said no, Defendant Tameka Harris continued to sit on Plaintiff's back, holding Her down until she passed out, which constituted false imprisonment. If the court believes that the Plaintiff has not plausibly pleaded a claim for False Imprisonment, the Plaintiff respectfully requests leave to amend.

## 5. Plaintiff States a Claim for Negligence and Intentional Infliction of Emotional Distress

With regard to the tort of intentional infliction of emotional distress, "[t]he three required elements are: *first*, the conduct by the defendant must be 'extreme' and 'outrageous'; *second*, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third*, severe emotional distress must indeed occur as a result of the defendant's conduct." *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580, 585 (Ariz. 1987)(italics in original). "Whether the conduct is 'extreme and outrageous' enough to state a claim of relief is a question for the court." *Id.* (citing *Cluff v. Farmers Ins. Exchange*, 10 Ariz. App. 560, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)). "**A sexual assault** … is deeply 'offensive to human dignity.'" *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

Thus, Defendant's abusive sexual contact against Plaintiff was extreme and outrageous, and they violated Plaintiff's basic human and constitutional rights. As a result of his actions, the Plaintiff suffered and continues to suffer severe and permanent injuries, mental anguish, embarrassment, humiliation, distress, and damages. If the court believes that the Plaintiff has not plausibly pleaded a claim for negligence and intentional infliction of emotional distress, the Plaintiff respectfully requests leave to amend.

**A. DEFENDANTS' MOTION IS SUBJECT TO STRIKE AND TO SANCTIONS FOR FAILING TO MEET AND CONFER**

Under FRCP 12(f), a Court has the power to strike a motion or pleading. Further, pursuant to LR 7-3, if an opposing party refuses to participate in good faith, the moving party shall explain the refusal in detail. Failure by any party to comply in good faith with the "meet and confer" requirement may result in an order to show cause re: sanctions—including, as appropriate, striking or denying the motion, deeming the motion unopposed, and/or awarding monetary sanctions.

Here, Ms. Cameron-Banks did not meet and confer in good-faith by only e-mailing Mr. Diggs, and not even including his Secretaries whom she had always included previously. Ms. Cameron-Banks knew that she had only met and conferred with Ms. Aman and Mr. Blackburn, but decided to leave them off the correspondence to "meet and confer" regarding the FAC. Thus, Plaintiff did not have a reasonable opportunity to cure any potential deficiencies, and were not put on proper notice of Defendants' intent to file an Motion to Dismiss.

**B. PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND**

A party may amend its pleading with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Federal Rule of Civil Procedure 15 mandates that leave to amend ***"be freely given when justice so requires."*** Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). In determining whether to allow an amendment, a court considers the four *Foman* factors: Whether there is (a) undue delay, (b) bad faith, (c) undue prejudice to the opposing party, or (d) futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "Not all of the [Foman] factors merit equal weight. . . . [I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a

presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original) (quoting *Lawrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997)). "Where the plaintiff offers to provide 'additional evidence' that would add 'necessary details' to an amended complaint and such offer is made in good faith, leave to amend should be granted." *McMullen v. Fluor Corp.*, 81 F. App'x 197, 199 (9th Cir. 2003) citing *Broudo v. Dura Pharm.*, 339 F.3d 933, 941 (9th Cir. 2003).

Here, Plaintiff respectfully requests the Court freely grant the Plaintiff leave to amend her original Complaint because justice supports Plaintiff be given the opportunity to correct and amend her Complaint to avoid a potentially fatal result resulting from an adverse ruling on Defendant's Motion to Dismiss.

### 1. <u>Good Cause Exists to Grant Leave to Amend</u>

Here, good cause exists to grant leave to amend because this will be Plaintiff's First Leave to Amend and is only being amended to demonstrate that Plaintiff has additional facts, witness affidavits, and supporting evidence to support the claims she raised in her pleadings.

### 2. <u>Plaintiff's Motion for Leave to Amend is Timely</u>

The Plaintiff's Motion for Leave is timely because a motion for leave to amend can be requested at any time. The Plaintiff is moving to amend her Complaint as the Plaintiff indicated she would do on the face of her pleading.

### 3. <u>There is No Prejudice to Defendant to Grant Plaintiff's Request to Amend the Complaint</u>

Here, there is no prejudice to the Defendant for Plaintiff to Amend the Complaint because the case is still in its infancy, and no trial date has been set. Moreover, this is the Plaintiff's first Leave to Amend.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiffs respectfully request that this Court Strike Defendants' Motion to Dismiss, or in the alternative, Deny Defendants'

Motion in full, and grant the Plaintiff's request to amend her Complaint.

**Respectfully submitted,**

Dated: October 9, 2024            **IVIE McNEILL WYATT PURCELL & DIGGS**


                                  **By: _/s/ Rodney S. Diggs_____**
                                      **RODNEY S. DIGGS, ESQ.**
                                      Attorney for Plaintiff,
                                      **JANE DOE**

## DECLARATION OF RODNEY DIGGS

1.      I am admitted to practice before all the courts of the State of California. I am familiar with the file in this matter and the contents thereof. The facts stated below are of my own knowledge, and if called upon to testify, I could and would testify competently and truthfully thereto.

2.      I am Counsel of Record for Plaintiff. However, I have Counsel who intends to appear pro hac vice in this matter, Tyrone Blackburn.

3.      Mr. Blackburn has had several conversations with Counsel for Defendants, Ms. Indira Cameron-Banks.

4.      My associate, Tyrine Aman, has also assisted me with meet and confer efforts with Ms. Indira Cameron-Banks.

5.      Defendant filed a Motion to Dismiss, which, among other things, asserted Plaintiff's claims should be dismissed for failure to state a claim.

6.      On June 20, 2027, Tyrine Aman and Tyrone Blackburn met and conferred telephonically with Ms. Cameron-Banks to discuss Plaintiff filing her amended Complaint. Plaintiff was to provide case law and statutory authority for some of the issues raised by Defendant's Counsel that Defendants' Counsel indicated she was intending to otherwise bring on a Motion to Dismiss.

7.      On June 27, 2024, before receiving anything from Plaintiff's Counsel or ever following up with Plaintiff's Counsel, Defendants filed a motion to dismiss Plaintiffs Complaint.

8.      Plaintiff's Counsel was engaged in a Court trial from the end of June to early July.

9.      On July 17, 2024, my office reached out to Counsel for Defendants and requested a stipulation to amend Plaintiff's Complaint. Defendants' Counsel refused which was particularly in bad faith since Plaintiff granted and entered into two Stipulations to time to file a responsive pleading with Defendants.

10.     On August 28, 2024, pursuant to the Court ruling that Plaintiff may amend

her Complaint, Plaintiff filed her First Amended Complaint (Dkt. 37).

11.    Ms. Cameron-Banks only sent me an e-amil on September 4, 2024 to meet and confer regarding the FAC.

12.    I did not see this e-mail because it went to my spam.

13.    Ms. Cameron Banks-emailed me again on September 6, 2024. It again went to my spam because I had never e-mailed Ms. Cameron-Banks. Only my associate Tyrine Aman or Tyrone Blackburn, who is barred in the state of Nbew York and currently in the process of being admitted pro hac voice in this matter, have communicated with Ms. Cameron-Banks via e-mail or phone.

14.    I have never spoken to Ms. Cameron-Banks, thus, the fact that she only sent emails to me, only, demonstrates bad-faith and her intention of circumventing a good-faith meet and confer process.

15.    Ms. Cameron-Banks always cc'd Tyrine Aman and Tyrone Blackburn on all e-mails prior to her "meet and confer e-mails" to only me following the filing of the First Amended Complaint.

16.    Ms. Cameron-Banks has made serious misrepresentations in her Motion to Dismiss Plaintiff's First Amended Complaint, namely that Tyrine Aman and Tyrone Blackburn said they were not on the case. I am the primary and handling attorney, however, it was made very clear to Ms. Cameron-Banks through verbal representation and through practice that Ms. Aman and Mr. Blackburn were assisting on the matter.

17.    Because of this, we were not put on any notice of the Defense's intent to file a Motion to Dismiss Plaintiff's FAC.

18.    Because of this, my office missed the e-notification of the Defendant filing the Motion to Dismiss.

19.    Plaintiff should not be prejudiced by the unfortunate result of Defendants' failure to properly meet and confer, in good-faith as required under the federal rules.

20.    Plaintiff's case should be decided on the merits.

21.    I sincerely apologize to the Court for any inconvenience this may have caused, as it is not the norm or practice of my office to fail to oppose critical motions.

22.    Ther reason my office became privy to Defendants' Motion to Dismiss Plaintiff's FAC is through Defendants' Notice of Non-Opposition filed October 7, 2024.

23.    Plaintiff has now filed her Opposition herein, only two days following notice and without delay.

24.    Defendants' Motion to Dismiss should be stricken for failure to comply with the Local Rule requirement to meet and confer <u>in good faith.</u>

25.    In the Motion to Dismiss is not Stricken, on behalf of Plaintiff my office requests this Opposition be considered in response to Defendants' Motion to Dismiss Plaintiff's FAC.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 9th day of October, 2024 in Los Angeles, California.

***/s/ Rodney S. Diggs***
Rodney S. Diggs, Declarant